IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| STEVE RIDDICK, | ) | CASE NO. 7:21CV00177 |
| Plaintiff, | ) | |
| v. | ) | __MEMORANDUM OPINION__ |
| | ) | |
| LT. CARROLL STANLEY, <u>ET AL</u>, | ) | By:  Hon. Thomas C. Cullen |
| Defendants. | ) | United States District Judge |

Steve Riddick, a Virginia inmate proceeding *pro se*, filed this civil rights complaint pursuant to 42 U.S.C. § 1983, alleging that prison officials wrongfully interfered with his outgoing and incoming legal mail. Riddick complied with the required filing prerequisites, *see* 28 U.S.C. § 1915(b), but upon review of the pleadings, the court concludes that Riddick's complaint must be summarily dismissed without prejudice for failure to state a claim.

## I.

Liberally construed, Riddick alleges that an officer in the prison mailroom indicated in writing that Riddick's mailing and a requested money order were processed on October 16, 2020, related to Riddick's civil action, No. 7:20CV00580 in this court. Later in October 2020, the court dismissed that case without prejudice, stating that Riddick had not timely submitted the required financial information. Riddick's motion for reinstatement of the case was granted. When Riddick filed a grievance about the problems in the mailroom, prison officials rejected it because he had suffered no harm related to his lawsuit. Other grievances were rejected as untimely, but Riddick believes the timeline was incorrectly tabulated.

On November 30, 2020, prison investigator Bentley brought Riddick two pieces of legal mail that were opened across the top of the envelope and not taped. Bentley and a

mailroom officer, Dotson, said that the mail had arrived in that condition. Bentley allegedly told Riddick that he received the open mailings from a female staff member in the mailroom. The only female staff member there is F. Stanley. The mail inside included an order directing the clerk to reopen Case No. 7:20CV00580 and an order granting an extension of time in a prior case. When Riddick filed a grievance about this incident, C. Meade rejected it at intake, noting that the condition in which a mailing arrived at the prison is outside the control of the Virginia Department of Corrections ("VDOC"). Defendant Bivens upheld Meade's ruling.

On November 12, 2020, Riddick gave an officer two pieces of outgoing mail and a money withdrawal form to cover postage. One of these mailings included financial information to support Riddick's motion for *in forma pauperis* status for purposes of service of process in Case No. 7:20CV00081 and Case No. 7:20CV00096. These mailings were allegedly not processed. The magistrate judge allowed Riddick to resubmit his paperwork, however, and the court granted him *in forma pauperis* for purposes of service of defendants in those cases.

Riddick asserts that prison officials have displayed a pattern of not sending mail out promptly and of bringing incoming mail to him already opened. He complains that unspecified letters he has sent to his attorneys at the law firm White and Case, related to a separate civil action those attorneys are pursuing on Riddick's behalf, were never received.  Riddick also states that in May 2020, a cardboard manilla package he received from White and Case was already opened when Bentley brought it to him. Bentley stated that he had received the package in that condition from a female in the prison mailroom.

In Riddick's § 1983 complaint, he alleges the following claims for relief. First, Riddick contends that Lt. C. Stanley and A. Kilgore, as mailroom supervisors, must be liable for the

alleged pattern of staff misconduct regarding outgoing and incoming mail as described in his complaint. Second, he asserts that C. Stanley, Kilgore, Bentley, and perhaps other mailroom staff, violated his right to access the courts and his right to due process by "allowing the opening [and] tampering" of his mail from the court or his attorneys on two occasions in May and November 2020. Third, Riddick claims that defendants Bivens and Meade violated his constitutional rights by rejecting his grievances about his mail difficulties. As relief, he seeks compensatory damages.

## II.

Section 1983 permits an aggrieved party to file a civil action against a person for actions taken under color of state law that violated his constitutional rights. *Cooper v. Sheehan*, 735 F.3d 153, 158 (4th Cir. 2013). The court must dismiss a prisoner's § 1983 action about prison conditions "if the court is satisfied that the action is frivolous, malicious, [or] fails to state a claim upon which relief can be granted." 42 U.S.C. § 1997e(c)(1). Although a complaint "does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitle[ment] to relief requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations and quotations omitted). "Factual allegations must be enough to raise a right to relief above the speculative level," *id.*, with all the allegations in the complaint taken as true and all reasonable inferences drawn in the plaintiff's favor, *Chao v. Rivendell Woods, Inc.*, 415 F.3d 342, 346 (4th Cir. 2005). "[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (citing *Twombly*, 550 U.S. at 556). A claim is plausible if the complaint contains "factual content that allows the court to draw the

reasonable inference that the defendant is liable for the misconduct alleged," and if there is "more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678.

To allow for the development of potentially meritorious claims, federal courts have an obligation to construe *pro se* pleadings liberally. *See, e.g., Boag v. MacDougall*, 454 U.S. 364, 365 (1982). Moreover, "[l]iberal construction of the pleadings is particularly appropriate where . . . there is a pro se complaint raising civil rights issues." *Smith v. Smith*, 589 F.3d 736, 738 (4th Cir. 2009). Nevertheless, "[p]rinciples requiring generous construction of pro se complaints are not . . . without limits." *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985). "A pro se plaintiff still must allege facts that state a cause of action." *Bracey v. Buchanan*, 55 F. Supp. 2d 416, 421 (E.D. Va. 1999).

Riddick has not stated any actionable constitutional claim regarding undelivered mail to his attorneys in the separate civil action. These allegations present, at most, an unspecified number and type of mailings that allegedly did not reach his attorneys, were not processed as quickly as intended, or arrived already opened. Without more, "occasional incidents of delay or non-delivery of mail do not rise to a constitutional level." *Pearson v. Simms*, 345 F. Supp. 2d 515, 519 (D. Md. 2003), *aff'd*, 88 F. App'x 639 (4th Cir. 2004); *Buie v. Jones*, 717 F.2d 925, 926 (4th Cir. 1983) (finding that isolated instances of mishandling of inmate mail do not constitute valid constitutional claim).

Second, the court must summarily dismiss Riddick's claims that any defendants have violated his constitutional rights by refusing to accept his grievance documents. It is well established that "inmates have no constitutional entitlement or due process interest in access to a grievance procedure. An inmate thus cannot bring a § 1983 claim alleging denial of a

specific grievance process." *Booker v. S.C. Dep't of Corr.*, 855 F.3d 533, 541 (4th Cir. 2017). Accordingly, prison officials' alleged refusal to accept or rule as desired on an inmate's grievance documents does not, by itself, present any claim that he has been deprived of constitutionally protected rights as required to proceed under § 1983.

Finally, Riddick's allegations fail to state any actionable claim of supervisory liability against any defendant for interfering with his incoming legal mail. To set forth a claim for supervisory liability under § 1983, a plaintiff must show:  (1) that the supervisor had actual or constructive knowledge that subordinates were engaged in conduct that posed "a pervasive and unreasonable risk" of constitutional injury to citizens like the plaintiff; (2) that the supervisor's response to that knowledge was so inadequate as to show "deliberate indifference to or tacit authorization of the alleged offensive practices"; and (3) that there was an "affirmative causal link" between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff. *Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994). "The plaintiff . . . assumes a heavy burden of proof in supervisory liability cases" because "[h]e must not only demonstrate that the prisoners face a pervasive and unreasonable risk of harm from some specified source, but he must show that the supervisor's corrective inaction amounts to deliberate indifference or 'tacit authorization of the offensive [practices].'" *Slakan v. Porter*, 737 F.3d 368, 372 (4th Cir. 1984) (quoting *Orpiano v. Johnson*, 632 F.2d 1096, 1101 (4th Cir. 1980)) (alteration in original). "[H]e cannot satisfy his burden of proof by pointing to a single incident or isolated incidents, . . . [n]or can [a supervisor] reasonably be expected to guard against the deliberate criminal acts of his properly trained employees when he has no basis upon which to anticipate the misconduct." *Id.* And government officials may not be held liable for the

unconstitutional conduct of their subordinates under a theory of *respondeat superior*, or automatic liability. *Iqbal*, 556 U.S. at 676. For that reason, Riddick's claim that supervisory officials are automatically liable for purported mistakes by their mailroom subordinates cannot stand. *Id.*

To prove supervisors liable otherwise, Riddick has a high evidentiary burden that he has not met. "As to the first element under *Shaw*, '[e]stablishing a 'pervasive' and 'unreasonable' risk of harm requires evidence that the conduct is widespread, or at least has been used on several different occasions and that the conduct engaged in by the subordinate poses an unreasonable risk of harm of constitutional injury.'" *Wilkins v. Montgomery*, 751 F.3d 214, 226 (4th Cir. 2014) (quoting *Shaw*, 13 F.3d at 799) (alteration in original). Riddick's two or three allegedly opened mailings from this court or from his attorneys over a six-month period are not sufficient to support a finding that any supervisory defendant knew of a pattern of mishandling legal mail in the manner alleged.

"As to the second element, a plaintiff 'may establish deliberate indifference by demonstrating a supervisor's continued inaction in the face of documented widespread abuses.'" *Id.* (quoting *Shaw*, 13 F.3d at 799). Again, isolated incidents of opened legal mail or packages are insufficient to put a supervisor on notice of a problem that needs attention. Without adequate notice of a problem, an official cannot be deemed deliberately indifferent. *Id.* Riddick has not alleged facts showing how any of the defendants knew of a wide-spread pattern of problems with outgoing or incoming legal mail.

"Finally, as to the third element, 'proof of causation may be direct . . . or may be supplied by the tort principle that holds a person liable for the natural consequences of his

actions.'" *Id.* at 226–27 (quoting *Shaw*, 13 F.3d at 799).  Riddick does not state any facts suggesting that any of his purported legal mail frustrations were *caused* by any action or inaction by the supervisory defendants that he has named.

For the reasons stated, the court concludes that Riddick's claims regarding his legal mail issues must be summarily dismissed without prejudice, pursuant to § 1997e(c)(1), for failure to state a claim upon which relief could be granted.  An appropriate order will issue this day.  The clerk will send plaintiff a copy of this Memorandum Opinion and the accompanying Final Order.

**ENTERED** this 6th day of August, 2021.

*/s/ Thomas T. Cullen*
HON. THOMAS T. CULLEN
UNITED STATES DISTRICT JUDGE